Michael E. Murphy, Esq. (Bar #174408)
Selim Mounedji, Esq. (Bar #173347)
SIMS LAW FIRM, LLP
101 Pacifica, Suite 210
Irvine, California 92618
(949) 253-7900
(949) 253-7930 - FAX

Attorneys for Defendants NATIONAL RAILROAD PASSENGER CORPORATION service mark AMTRAK and BRUCE GARRETT

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA DETWEILER, individually and as successor-in-interest to Nicholas Detweiler, deceased,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF MOUNT SHASTA; JEREMIAH CAPURRO; NATIONAL RAILROAD PASSENGER CORPORATION; BRUCE GARRETT; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:24-cv-03100-WBS-SCR<br><br>**STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF DEFENDANTS NATIONAL RAILROAD PASSENGER CORPORATION'S AND BRUCE GARRETT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT**<br><br>Date: November 23, 2026<br>Time: 1:30 p.m.<br>Courtroom: Courtroom 5, 14th Floor<br><br>Complaint Filed: November 7, 2024<br>Trial Date: March 9, 2027 |

Pursuant to Eastern District of California Local Rule 260, Defendants NATIONAL RAILROAD PASSENGER CORPORATION service mark AMTRAK ("Amtrak") and BRUCE GARRETT ("Garrett") submit the following Statement of Uncontroverted Facts and Conclusions of Law:

///

///

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| 1. Plaintiff's lawsuit arises from a City of Mt. Shasta Police Department shooting on December 25, 2023, aboard Amtrak Train 11 at approximately 12:28 a.m. in the City of Mt. Shasta. | Declaration of Bruce Garrett at pg. 2, lines 3 through 4. |
| 2. Decedent and the relief train crew, including Garrett, boarded the train at Klamath Falls at approximately 10:13 p.m. on December 24, 2023. | Declaration of Bruce Garrett at pg. 2, lines 8 through 9. |
| 3. Garrett served as the assistant conductor aboard the train, with duties that included checking passengers' tickets. | Declaration of Bruce Garrett at pg. 2, lines 9 through 10. |
| 4. Decedent was the only passenger who boarded the train at Klamath Falls. | Declaration of Bruce Garrett at pg. 2, lines 10 through 11. |
| 5. During the job briefing, an Amtrak station agent told Garrett that Decedent had been acting strangely and had a history of police issues. | Declaration of Bruce Garrett at pg. 2, lines 12 through 13. |
| 6. Garrett went to the lobby and asked to see Decedent's ticket. | Declaration of Bruce Garrett at pg. 2, line 14. |
| 7. Decedent stood, raised his left arm in what Garrett described as a "Dracula pose," and asked, "Why are you talking to me." | Declaration of Bruce Garrett at pg. 2, lines 14 through 16. |
| 8. Decedent produced a valid ticket for travel from Klamath Falls to Emeryville, so Garrett issued him a boarding pass. | Declaration of Bruce Garrett at pg. 2, lines 16 through 17. |

| | |
|---|---|
| 9. Garrett thought that Decedent was a bit “weird” and probably just a “meth head,” but Decedent’s conduct did not cause Garrett enough concern at that time to deny him boarding. | Declaration of Bruce Garrett at pg. 2, lines 17 through 19. |
| 10. During the boarding process, Decedent walked in the wrong direction toward the head end of the train, so Garrett directed him to the correct coach car. | Declaration of Bruce Garrett at pg. 2, lines 20 through 21. |
| 11. Decedent carried no luggage other than a couple of plastic Walmart-type bags. | Declaration of Bruce Garrett at pg. 2, lines 21 through 22. |
| 12. Amtrak assigned him to Car 11, Seat 9, approximately four rows behind the front vestibule connecting Car 11 to Car 12. | Declaration of Bruce Garrett at pg. 2, lines 22 through 23. |
| 13. The train’s next stop was Dunsmuir, approximately two hours and twenty minutes away. | Declaration of Bruce Garrett at pg. 2, line 24. |
| 14. Within five minutes of departing, a passenger informed Garrett that a passenger matching Decedent’s description had brandished brass knuckles on his hand menacingly in the café car. | Declaration of Bruce Garrett at pg. 2, lines 25 through 26. |
| 15. California law criminalizes the possession of metal knuckles. | Cal. Penal Code § 21810. |
| 16. When Garrett went to investigate, other passengers told him that the person brandished brass knuckles then went to the coach cars. | Declaration of Bruce Garrett at pg. 2, lines 26 through 27. |

| | |
|---|---|
| 17. Garrett found Decedent in the vestibule area connecting cars 11 and 12. | Declaration of Bruce Garrett at pg. 2, line 28. |
| 18. Decedent told Garrett that he was trying to go to Emeryville. | Declaration of Bruce Garrett at pg. 2, line 28, through pg. 3, line 1. |
| 19. Garrett reassured Decedent that the train was traveling to Emeryville. | Declaration of Bruce Garrett at pg. 3, lines 1 through 2. |
| 20. Garrett calmed Decedent, who returned to his seat. | Declaration of Bruce Garrett at pg. 3, line 2. |
| 21. The trip from Klamath Falls to Emeryville aboard Amtrak Train 11 lasts approximately ten hours. | Declaration of Bruce Garrett at pg. 3, lines 2 through 3. |
| 22. Cellphone reception becomes spotty approximately 10 minutes out of Klamath Falls until the train gets near Mt. Shasta. | Declaration of Bruce Garrett at pg. 3, lines 4 through 5. |
| 23. If a public safety issue arises en route from Klamath Falls to Mt. Shasta, Garrett calls his engineers on his low power radio pack-set, and the engineers use the powerful locomotive radio to call Union Pacific's ("UP") dispatcher. | Declaration of Bruce Garrett at pg. 3, lines 5 through 7. |
| 24. UP's dispatcher then calls UP's Response Management Communication Center ("RMCC"), and RMCC calls local law enforcement/emergency personnel. | Declaration of Bruce Garrett at pg. 3, lines 7 through 9. |
| 25. When Train 11 entered a siding at Worden, Garrett spoke with his conductor. | Declaration of Bruce Garrett at pg. 3, line 10. |

| | |
|---|---|
| 26. The Worden siding lies approximately 13 to 14 rail miles south of the Klamath Falls Amtrak Station. | Declaration of Bruce Garrett at pg. 3, lines 10 through 11. |
| 27. Garrett and his conductor discussed that brass knuckles are a deadly weapon and that they faced a long trip through the darkness, so they decided to remove Decedent from the train. | Declaration of Bruce Garrett at pg. 3, lines 11 through 13. |
| 28. While the train remained in the Worden siding, RMCC advised that no local authorities were available and recommended taking Decedent to Dunsmuir or Mt. Shasta, which is just north of Dunsmuir. | Declaration of Bruce Garrett at pg. 3, lines 14 through 16. |
| 29. Garrett and his conductor agreed, planned to walk through the train more often, and continued to monitor Decedent. | Declaration of Bruce Garrett at pg. 3, lines 16 through 17. |
| 30. Approximately three minutes after Train 11 departed the Worden siding, a female passenger told Garrett that a man in Car 12 was menacing people with brass knuckles. | Declaration of Bruce Garrett at pg. 3, lines 18 through 19. |
| 31. Garrett walked from the café car through Car 11 to Car 12 with a male dining car attendant. | Declaration of Bruce Garrett at pg. 3, lines 19 through 20. |
| 32. Garrett saw Decedent in Car 12 through the end door window. | Declaration of Bruce Garrett at pg. 3, lines 20 through 21. |

| | |
|---|---|
| 33. Garrett approached Decedent, reminded him that they had just talked, and asked him to return to his seat in Car 11. | Declaration of Bruce Garrett at pg. 3, lines 21 through 22. |
| 34. Decedent pulled out the brass knuckles and stood in a “Dracula” like pose. | Declaration of Bruce Garrett at pg. 3, lines 22 through 23. |
| 35. The dining car attendant who accompanied Garrett with a crowbar told Decedent to put the brass knuckles away. | Declaration of Bruce Garrett at pg. 3, lines 23 through 24. |
| 36. Garrett directed the dining car attendant to stand down and relied on his 8.5 years of training and experience as an Amtrak conductor to successfully deescalate the encounter. | Declaration of Bruce Garrett at pg. 3, lines 24 through 26. |
| 37. Garrett convinced Decedent to return to his seat and sit down. | Declaration of Bruce Garrett at pg. 3, line 27. |
| 38. Garrett stayed in Car 11 near the stairs in the middle of the car to watch Detweiler for 15 minutes, during which Decedent stayed in his seat. | Declaration of Bruce Garrett at pg. 3, line 27, through pg. 4, line 1. |
| 39. Garrett then went to the dining car for water and talked to his conductor again. | Declaration of Bruce Garrett at pg. 4, line 1. |
| 40. They now definitely did not want Decedent walking around with brass knuckles and wanted him removed from the train.<br>///<br>///<br>/// | Declaration of Bruce Garrett at pg. 4, lines 1 through 3. |

| | |
|---|---|
| 41. At approximately midnight, Garrett coordinated with dispatching railroad UP's RMCC regarding the train's expected arrival time in Mt. Shasta for local law enforcement's removal of Decedent from the train. | Declaration of Bruce Garrett at pg. 4, lines 4 through 6. |
| 42. After a couple of hours, Garrett had not yet heard back from UP's dispatcher or RMCC so he decided to call the Mt. Shasta police department as the train got closer to Mt. Shasta. | Declaration of Bruce Garrett at pg. 4, lines 6 through 7. |
| 43. Garrett asked for Mt. Shasta Police Department's removal of Decedent from the train at Lake Street. | Declaration of Bruce Garrett at pg. 4, lines 8 through 9. |
| 44. Garrett provided Decedent's name, information about Decedent's rumored prior police incidents, and information about Decedent's brass knuckles. | Declaration of Bruce Garrett at pg. 4, lines 9 through 10. |
| 45. As Train 11 approached Lake Street, Garrett went downstairs, locked the door to the lower-level passenger seating area, and positioned himself near the upper-level stairs. | Declaration of Bruce Garrett at pg. 4, lines 11 through 12. |
| 46. The conductor remained on the lower level and gave the locomotive engineers the car count needed to stop Car 11 at Lake Street.<br>///<br>///<br>/// | Declaration of Bruce Garrett at pg. 4, lines 12 through 14. |

| | |
|---|---|
| 47. After the train stopped, the conductor met Officer Capurro at the door and directed him upstairs. Garrett then walked past Decedent, pointed him out to Officer Capurro, and continued to the vestibule between Cars 11 and 12 so Officer Capurro could remove Decedent. | Declaration of Bruce Garrett at pg. 4, lines 14 through 16.<br><br>Body Worn Camera Footage of incident; attached as Exhibit A to the Declaration of Michael E. Murphy.<br><br>Deposition of Jeremiah Capurro taken on March 27, 2026 at pg. 39, lines 3 through 16; attached as Exhibit B to the Deposition of Michael E. Murphy |
| 48. Garrett stood in the vestibule between Cars 11 and 12 after pointing out Decedent to Officer Capurro. | Declaration of Bruce Garrett at pg. 4, lines 17 through 18.<br><br>Body Worn Camera Footage of incident; attached as Exhibit A to the Declaration of Michael E. Murphy. |
| 49. Garrett disabled the automatic door-opening mechanism to prevent Decedent from entering Car 12, where other passengers were located. | Declaration of Bruce Garrett at pg. 4, lines 18 through 19. |
| 50. Garrett's conductor remained in the middle of Car 11 near the stairs after Officer Capurro followed Garrett to Decedent's seat. | Declaration of Bruce Garrett at pg. 4, lines 19 through 20.<br><br>Body Worn Camera Footage of incident; attached as Exhibit A to the Declaration of Michael E. Murphy. |

| | |
|---|---|
| 51. Officer Capurro told Decedent that he needed to leave the train and instructed him to keep his hands raised and not touch anything. | Declaration of Bruce Garrett at pg. 4, lines 21 through 22.<br><br>Body Worn Camera Footage of incident; attached as Exhibit A to the Declaration of Michael E. Murphy. |
| 52. Decedent stood up suddenly and moved into the aisle where he faced off with Officer Capurro, placing himself between Officer Capurro and Garrett, who had moved to the front of the railcar into the vestibule area after pointing out Decedent to Officer Capurro. | Declaration of Bruce Garrett at pg. 4, lines 22 through 25.<br><br>Body Worn Camera Footage of incident; attached as Exhibit A to the Declaration of Michael E. Murphy. |
| 53. Decedent ignored Officer Capurro's commands and reached for a bag on the adjacent seat. Officer Capurro attempted to take the bag while again ordering Decedent to keep his hands raised, but Decedent continued to resist. | Declaration of Bruce Garrett at pg. 4, lines 26 through 28.<br><br>Body Worn Camera Footage of incident; attached as Exhibit A to the Declaration of Michael E. Murphy.<br><br>Deposition of Jeremiah Capurro taken on March 27, 2026 at pg. 102, lines 11 through 17; attached as Exhibit B to the Deposition of Michael E. Murphy |

| | |
|---|---|
| 54. Decedent continued to ignore Officer Capurro's requests, prompting Officer Capurro to draw his taser. | Declaration of Bruce Garrett at pg. 5, lines 1 through 2.<br><br>Body Worn Camera Footage of incident; attached as Exhibit A to the Declaration of Michael E. Murphy.<br><br>Deposition of Jeremiah Capurro taken on March 27, 2026 at pg. 48, lines 11 through 12; attached as Exhibit B to the Deposition of Michael E. Murphy |
| 55. Decedent grabbed the taser, and the ensuing struggle discharged it into the ceiling and rendered it useless. | Declaration of Bruce Garrett at pg. 5, lines 2 through 3.<br><br>Body Worn Camera Footage of incident; attached as Exhibit A to the Declaration of Michael E. Murphy.<br><br>Deposition of Jeremiah Capurro taken on March 27, 2026 at pg. 51, lines 2 through 9; and pg. 105, lines 6 through 9; attached as Exhibit B to the Deposition of Michael E. Murphy<br><br>///<br><br>/// |

| | |
|---|---|
| 56. Officer Capurro next deployed his baton, but Decedent continued to resist and fight while Garrett stood a few feet away in the vestibule. | Declaration of Bruce Garrett at pg. 5, lines 3 through 4.<br><br>Body Worn Camera Footage of incident; attached as Exhibit A to the Declaration of Michael E. Murphy.<br><br>Deposition of Jeremiah Capurro taken on March 27, 2026 at pg. 58, lines 10 through 14; attached as Exhibit B to the Deposition of Michael E. Murphy |
| 57. During the altercation, Decedent struck Officer Capurro twice in the face with enough force that it disabled his earpiece and Officer Capurro was feeling on the verge of blacking out. | Declaration of Bruce Garrett at pg. 5, lines 4 through 5.<br><br>Body Worn Camera Footage of incident; attached as Exhibit A to the Declaration of Michael E. Murphy.<br><br>Deposition of Jeremiah Capurro taken on March 27, 2026 at pg. 6, lines 14 to 25; and pg. 31, line 3 through 6; attached as Exhibit B to the Deposition of Michael E. Murphy<br><br>Statement of Officer Capurro at MSPD000143; attached as Exhibit C to the Declaration of Michael E. Murphy. |

| | |
|---|---|
| 58. During the fight, Decedent backed away from Officer Capurro into the Car 11 vestibule, where Garrett had already been standing, backing Garrett up farther against the vestibule door. | Declaration of Bruce Garrett at pg. 5, lines 6 through 7.<br><br>Body Worn Camera Footage of incident; attached as Exhibit A to the Declaration of Michael E. Murphy. |
| 59. Garrett attempted to restrain Decedent from behind to protect himself, the passengers, and Officer Capurro, but Decedent broke Garrett's grip and continued resisting arrest. | Declaration of Bruce Garrett at pg. 5, lines 7 through 9.<br><br>Body Worn Camera Footage of incident; attached as Exhibit A to the Declaration of Michael E. Murphy. |
| 60. Decedent placed the brass knuckles on his right fist while facing Officer Capurro, who had drawn his service weapon and pointed it at Decedent. | Declaration of Bruce Garrett at pg. 5, lines 9 through 10.<br><br>Body Worn Camera Footage of incident; attached as Exhibit A to the Declaration of Michael E. Murphy.<br><br>Deposition of Jeremiah Capurro taken on March 27, 2026 at pg. 102, lines 7 through 10; and pg. 102, lines 21 through 23; attached as Exhibit B to the Deposition of Michael E. Murphy |

| | |
|---|---|
| 61. Garrett reached out in an unsuccessful attempt to hold Decedent's arm against the wall, but Decedent again broke free, turned, and threw a brass-knuckle-clad punch at Garrett with his right fist. | Declaration of Bruce Garrett at pg. 5, lines 10 through 12.<br><br>Body Worn Camera Footage of incident; attached as Exhibit A to the Declaration of Michael E. Murphy.<br><br>Deposition of Jeremiah Capurro taken on March 27, 2026 at pg. 102, line 24 through pg. 103, line 2; and pg. 103, lines 10 through 16; attached as Exhibit B to the Deposition of Michael E. Murphy |
| 62. Officer Capurro immediately fired four shots in response, but Decedent continued to choke Garrett even after both men fell to the floor. | Declaration of Bruce Garrett at pg. 5, lines 12 through 14.<br><br>Body Worn Camera Footage of incident; attached as Exhibit A to the Declaration of Michael E. Murphy.<br><br>Deposition of Jeremiah Capurro taken on March 27, 2026 at pg. 103, lines 17 through pg. 104, line 19; attached as Exhibit B to the Deposition of Michael E. Murphy |

| | |
|---|---|
| 63. Officer Capurro fired two more shots before Decedent released Garrett. | Body Worn Camera Footage of incident; attached as Exhibit A to the Declaration of Michael E. Murphy.<br><br>Deposition of Jeremiah Capurro taken on March 27, 2026 at pg. pg. 103, line 23 through pg. 104, line 3; attached as Exhibit B to the Deposition of Michael E. Murphy |
| 64. The gunfire struck Garrett twice in his sides. | Declaration of Bruce Garrett at pg. 5, lines 14 through 15.<br><br>Deposition of Jeremiah Capurro taken on March 27, 2026 at pg. 38, lines 16 through 19; attached as Exhibit B to the Deposition of Michael E. Murphy |
| 65. Surgeons removed one projectile during emergency surgery, but the other shattered and remained in Garrett's body. | Declaration of Bruce Garrett at pg. 5, lines 14 through 15. |
| 66. Decedent had an extensive criminal history in the States of California, Oregon, and Illinois. | Criminal Records pertaining to Decedent; attached as Exhibit D to the Declaration of Michael E. Murphy. |
| 67. His criminal history included multiple convictions for burglary, assault with a deadly weapon, robbery, interference with a peace officer, resisting arrest, assault on a peace officer, battery on a peace officer, and multiple convictions for resisting arrest. | Criminal Records pertaining to Decedent; attached as Exhibit D to the Declaration of Michael E. Murphy. |

| | |
|---|---|
| 68. At the time of the incident, Decedent was on active felony supervised probation for possession of ammunition by a convicted felon and had a felony no-bail arrest warrant for a violation of his probation. | Criminal Records pertaining to Decedent; attached as Exhibit D to the Declaration of Michael E. Murphy. |
| 69. Notably, even Decedent's mother, Plaintiff herein, called the police twice due to Decedent threatening her. | Deposition of Julia Detweiler taken April 17, 2026, pg. 181, line 3, through pg. 184, line 4; and pg. 209, line 21, through pg. 214, line 15; attached as Exhibit E to the Declaration of Michael E. Murphy. |
| 70. Decedent's sister also called the police on him after Decedent threatened her and her daughter with a knife, and she filed a restraining order against him. | Deposition of Stamatia Haritoudis taken on April 16, 2026, pg. 69, line 15, through pg. 80, line 19, and Exhibit B to her deposition; attached as Exhibit F to the Declaration of Michael E. Murphy<br><br>Deposition of Julia Detweiler taken April 17, 2026, pg. 185, line 18, through pg. 186, line 4; attached as Exhibit E to the Declaration of Michael E. Murphy. |
| 71. At the time of the incident, Garrett held federal conductor certification under 49 C.F.R. pt. 242.<br>///<br>///<br>///<br>/// | Declaration of Fred Mattison at pg. 3, lines 15, through 19. |

| | |
|---|---|
| 72. Conductors direct train operations and protect passenger safety. | Deposition of Ricky Witt, taken on July 15, 2026, at pg. 25, lines 2 through 11; attached as Exhibit G to the Declaration of Michael Murphy. |
| 73. Amtrak's Police Department trains conductors in deescalation techniques. | Deposition of Douglas Calcagno, taken on July 15, 2026, at pg. 52, lines 19 through 23; pg. 53, lines 6 to 15; pg. 21, lines 21 through pg. 22, line 14; attached as Exhibit H to the Declaration of Michael Murphy,. |
| 74. Amtrak's rules and California law authorize Amtrak conductors to remove passengers who present a safety risk to themselves or others. | Deposition of Ricky Witt, taken on July 15, 2026, at pg. 6, lines 10 through 17; pg. 22, line 23 through pg. 23, line 3; pg. 38, lines 4 through 9; pg. 57, line 15 through pg. 59, line 9; attached as Exhibit G to the Declaration of Michael E. Murphy<br><br>Cal. Civ. Code §§ 2186, 2188 [§ 2186: common carrier may require passengers to conform to rules of carriage, if they are lawful, public, uniform in their application, and reasonable; § 2188: passenger who refuses to conform to any lawful regulation of the carrier may be ejected.] |
| 75. Plaintiff's Complaint seeks damages against Officer Capurro, the City of Mt. Shasta, Garrett, and Amtrak.<br>/// | Document 1, Plaintiff's Complaint, generally. |

| | |
|---|---|
| 76. Plaintiff asserts three claims against Amtrak and Garrett: the Fifth Claim for Relief under the Americans with Disabilities Act ("ADA"); the Sixth Claim for Relief for battery; and the Seventh Claim for Relief for negligence. | Document 1, Plaintiff's Complaint, pg. 15, line 1, through pg. 16, line 10; and pg. 16, line 11, through pg. 18, line 3; and pg. 18, line 4, through pg. 20, line 1. |
| 77. Plaintiff bases her negligence and battery theories against Garrett on his alleged restraint of Decedent during the altercation with Officer Capurro. | Document 1, Plaintiff's Complaint, pg. 18, lines 17 through 22. |
| 78. As to Amtrak, the Complaint alleges that Amtrak is vicariously liable for Garrett's acts and "for negligently improperly training him with regard to situations involving police officers on Amtrak trains, with regard to addressing disturbances on trains and involving passengers, and with regard to the use of physical restraint and other force against passengers."<br>///<br>///<br>///<br>///<br>///<br>///<br>///<br>/// | Document 1, Plaintiff's Complaint, pg. 18, lines 17 through 22. |

| | |
|---|---|
| 79. The Complaint bases its ADA theory against Amtrak and Garrett on Amtrak's alleged failure to train Garrett to "respond and interact peacefully with individuals who have mental health impairments and/or are experiencing mental health crises" and on Garrett's alleged "failing to follow procedures for dealing with individuals with mental impairments and/or who are experiencing mental health crises." | Document 1, plaintiff's complaint at pg. 15, line 20 through pg. 26, line 1. |
| 80. Plaintiff designated Scott DeFoe as her sole liability expert. | Deposition of Scott A. DeFoe taken on August 19, 2026, pg. 6, lines 4 through 8; attached as Exhibit I to the Declaration of Michael E. Murphy |
| 81. DeFoe offers opinions concerning police and security practices, including use of force, premises liability, and foreseeability, and he has testified and prepared reports in railroad cases. | Deposition of Scott A. DeFoe taken on August 19, 2026, pg.125, line 13 to pg. 126, line 24; attached as Exhibit I to the Declaration of Michael E. Murphy |
| 82. DeFoe reviewed Garrett's interview transcripts, Garrett's deposition transcript, and Plaintiff's Complaint.<br><br>///<br>///<br>/// | Deposition of Scott A. DeFoe taken on August 19, 2026, pg. 8, lines 7-11, Exhibit A (Report) to Deposition at pgs. 2-3 ; attached as Exhibit I to the Declaration of Michael E. Murphy |

| | |
|---|---|
| 83. He opined that Officer Capurro boarded the train without first debriefing train personnel or developing and communicating a tactical plan; DeFoe attributed those failures to Officer Capurro, not to Garrett or Amtrak. | Deposition of Scott A. DeFoe taken on August 19, 2026, pg. 75, lines 2 through 19; Exhibit A at pg. 12, par. 1; attached as Exhibit I to the Declaration of Michael E. Murphy |
| 84. DeFoe identifies no fault by Amtrak or Garrett, describes Garrett as “trying to help,” attributes responsibility solely to Officer Capurro, and intends to offer no adverse opinion about Amtrak or Garrett at trial. | Deposition of Scott A. DeFoe taken on August 19, 2026, pg.126, line 25 through pg. 128, line 2; attached as Exhibit I to the Declaration of Michael E. Murphy |

DATED: October 16, 2026 SIMS LAW FIRM, LLP

/s/ *Selim Mounedji*
By ___________________________________
Selim Mounedji
Attorneys for Defendant NATIONAL RAILROAD PASSENGER CORPORATION service mark AMTRAK and BRUCE GARRETT