# EXHIBIT E

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Benjamin S. Levine (SBN 342060)
blevine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

JULIA DETWEILER, individually and successors-in-interest to Nicholas Detweiler, deceased,

Plaintiffs,

v.

CITY OF MOUNT SHASTA; JEREMIAH CAPURRO; NATIONAL RAILROAD PASSENGER CORPORATION; BRUCE GARRETT; and DOES 1 through 10, inclusive,

Defendants.

Case No. 2:24-cv-03100-WBS-SCR

*Hon. Mag. Judge Sean C. Riordan*

**PLAINTIFF JULIA DETWEILER'S SUPPLEMENTAL RESPONSES TO DEFENDANT NATIONAL RAILROAD PASSENGER CORPORATION SERVICE MARK AMTRAK'S INTERROGATORIES (SET ONE)**

**PROPOUNDING PARTY**: Defendant National Railroad Passenger Corporation Service Mark Amtrak

**RESPONDING PARTY**: Plaintiff Julia Detweiler

**SET NUMBER**: ONE (1)

attorney work-product doctrine and/or other applicable privileges and protections.

6. Inadvertent disclosure of such information shall not constitute a waiver of any privilege or ground for objecting to disclosing such information and shall not waive Responding Party's right to object to the use of such information.

7. Responding Party objects to the Interrogatories to the extent that they seek information that infringes upon the privacy rights of Responding Party or third parties.

8. Responding Party object to the Interrogatories to the extent that they seek information already known by, or reasonably accessible to Requesting Party, or facts that are solely within the knowledge and control of Requesting Party. Responding Party's objections to the disclosure of any information requested in the Interrogatories are not and shall not be construed as an admission that any such information exists.

**PLAINTIFF JULIA DETWEILER'S SUPPLEMENTAL RESPONSES TO DEFENDANT NATIONAL RAILROAD PASSENGER CORPORATION SERVICE MARK AMTRAK'S INTERROGATORIES, SET ONE**

**INTERROGATORY NO. 1:**

State in specific detail:

a. Each and every fact that supports your contention that Nicholas Detweiler was a "qualified individual" with a mental impairment that substantially limited his ability to care for himself and control his mental health condition as defined under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131(2);

b. How each fact supporting your contention legally caused your alleged harm; and

c. Each person you claim can support each alleged fact, including their names, addresses, and telephone numbers.

**RESPONSE TO INTERROGATORY NO. 1:**

OBJECTION. Federal Rule of Civil Procedure 33 provides that "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Responding Party objects on the grounds that this Interrogatory, by requesting specified information with respect to "[e]ach and every fact that supports" the referenced "contention," improperly introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it; thus, each subpart is considered a separate interrogatory for purposes of numerical limitation on interrogatories, no matter how it is designated. This Interrogatory requests: (1) "Each and every fact that supports your contention that Nicholas Detweiler was a 'qualified individual" with a mental impairment that substantially limited his ability to care for himself and control his mental health condition as defined under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131(2)"; (2) "How each fact supporting your contention legally caused your alleged harm"; and (3) "Each person you claim can support each alleged fact, including their names, addresses, and telephone numbers."

Responding Party further objects on the grounds that this Interrogatory is overbroad, harassing, unduly burdensome, and oppressive. The plain language of a request seeking "all facts" that support any legal claims, generally speaking and literally translated, includes nearly the entire universe of facts in this case, making the request improper and inappropriate. *Aldapa v. Fowler Packing Co., Inc.*, 310 F.R.D. 583, 591 (E.D. Cal. 2015) ("Contention interrogatories which 'systematically track all of the allegations in an opposing party's pleadings and that ask for each and every fact … that supports the party's allegations are an abuse of the discovery process because they are overly broad and unduly burdensome."); *In re Convergent*

*Techs. Sec. Litig.*, 108 F.R.D. 328, 336 (N.D. Cal. 1985) ("[A]t least in cases where defendants presumably have access to most of the evidence about their own behavior, it is not at all clear that forcing plaintiffs to answer these kinds of questions ... is sufficiently likely to be productive to justify the burden that responding can entail."); *see also id.* at 339 (the "filing of sets of contention interrogatories that systematically track all the allegations in an opposing party's pleadings is a serious form of discovery abuse."); *Tubbs v. Sacramento Cnty. Jail*, 2008 WL 863974, at *1 (E.D. Cal. Mar. 28, 2008) ("[P]laintiff is not required to present his entire case in discovery responses. 'Each and every fact' interrogatories pose problems for a responding party and a reviewing court. Parties are not tasked with laying out every jot and tittle of their evidentiary case in response to interrogatories."); *Aldapa*, 310 F.R.D. at 591 ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case …."); *Mach Sols. Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 528 (D.S.C. 2018) (Contention interrogatories "are overly broad and unduly burdensome on their face if they seek 'all facts' supporting a claim or defense, such that the answering party is required to provide a narrative account of its case …") (quoting *Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan. 2006))). This Interrogatory wrongfully calls for an expert opinion and/or disclosure of experts prior to the date for expert exchange set by the Fed. R. Civ. Pro. and/or the Scheduling Order in this case. Responding Party further objects that this Interrogatory is vague and ambiguous as phrased, overbroad, unduly burdensome, and harassing.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

Without waiving and subject to the foregoing objections, and construing this Interrogatory's request for "[e]ach and every fact" as seeking only the pertinent facts, Responding Party provides the following supplemental response: Nicholas

Detweiler was diagnosed with schizophrenia, schizoaffective disorder, bipolar disorder, major depression, and post-traumatic stress disorder.

Discovery is ongoing, and Responding Party reserves the right to further amend or supplement this response.

**INTERROGATORY NO. 7 (ERRONEOUSLY IDENTIFIED AS INTERROGATORY NO. 3):**

State in specific detail:

a. Each and every fact that supports any contention that AMTRAK failed to train BRUCE GARRETT to interact with, and provide services to, qualified individuals to ensure the protection of their personal and civil rights before December 24, 2023, including training in deescalation techniques;

b. How each fact supporting your contention legally caused your alleged harm; and

c. Each person you claim can support each alleged fact, including their names, addresses, and telephone numbers.

**RESPONSE TO INTERROGATORY NO. 7 (ERRONEOUSLY IDENTIFIED AS INTERROGATORY NO. 3):**

OBJECTION. Federal Rule of Civil Procedure 33 provides that "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Responding Party objects on the grounds that this Interrogatory, by requesting specified information with respect to "[e]ach and every fact that supports" the referenced "contention," improperly introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it; thus, each subpart is considered a separate interrogatory for purposes of numerical limitation on interrogatories, no matter how it is designated. This Interrogatory requests: (7) "Each and every fact that supports any contention that AMTRAK failed to train BRUCE GARRETT to interact with, and provide services

Nicholas Detweiler from behind, preventing Nicholas Detweiler from avoiding being subjected to such force.

Discovery is ongoing, and Responding Party reserves the right to further amend or supplement this response.

**INTERROGATORY NO. 10 (ERRONEOUSLY IDENTIFIED AS INTERROGATORY NO. 4):**

State in specific detail:

a. Each and every fact that supports any contention that AMTRAK discriminated against Nicholas Detweiler on the basis of any disability at any time related to Nicholas Detweiler's travel on December 24 and 25, 2023;

b. How each fact supporting your contention legally caused your alleged harm; and

c. Each person you claim can support each alleged fact, including their names, addresses, and telephone numbers.

**RESPONSE TO INTERROGATORY NO. 10 (ERRONEOUSLY IDENTIFIED AS INTERROGATORY NO. 4):**

OBJECTION. Federal Rule of Civil Procedure 33 provides that "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Responding Party objects on the grounds that this Interrogatory, by requesting specified information with respect to "[e]ach and every fact that supports" the referenced "contention," improperly introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it; thus, each subpart is considered a separate interrogatory for purposes of numerical limitation on interrogatories, no matter how it is designated. This Interrogatory requests: (10) "Each and every fact that supports any contention that AMTRAK discriminated against Nicholas Detweiler on the basis of any disability at any time related to Nicholas Detweiler's travel on December 24 and 25, 2023";

(11) "How each fact supporting your contention legally caused your alleged harm"; and (12) "Each person you claim can support each alleged fact, including their names, addresses, and telephone numbers."

Responding Party further objects on the grounds that this Interrogatory is overbroad, harassing, unduly burdensome, and oppressive. The plain language of a request seeking "all facts" that support any legal claims, generally speaking and literally translated, includes nearly the entire universe of facts in this case, making the request improper and inappropriate. *Aldapa v. Fowler Packing Co., Inc.*, 310 F.R.D. 583, 591 (E.D. Cal. 2015) ("Contention interrogatories which 'systematically track all of the allegations in an opposing party's pleadings and that ask for each and every fact … that supports the party's allegations are an abuse of the discovery process because they are overly broad and unduly burdensome."); *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 336 (N.D. Cal. 1985) ("[A]t least in cases where defendants presumably have access to most of the evidence about their own behavior, it is not at all clear that forcing plaintiffs to answer these kinds of questions ... is sufficiently likely to be productive to justify the burden that responding can entail."); *see also id.* at 339 (the "filing of sets of contention interrogatories that systematically track all the allegations in an opposing party's pleadings is a serious form of discovery abuse."); *Tubbs v. Sacramento Cnty. Jail*, 2008 WL 863974, at *1 (E.D. Cal. Mar. 28, 2008) ("[P]laintiff is not required to present his entire case in discovery responses. 'Each and every fact' interrogatories pose problems for a responding party and a reviewing court. Parties are not tasked with laying out every jot and tittle of their evidentiary case in response to interrogatories."); *Aldapa*, 310 F.R.D. at 591 ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case …."); *Mach Sols. Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 528 (D.S.C. 2018) (Contention interrogatories "are overly broad and unduly burdensome on their face

if they seek 'all facts' supporting a claim or defense, such that the answering party is required to provide a narrative account of its case …") (quoting *Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan. 2006))). This Interrogatory wrongfully calls for an expert opinion and/or disclosure of experts prior to the date for expert exchange set by the Fed. R. Civ. Pro. and/or the Scheduling Order in this case. Responding Party further objects that this Interrogatory is vague and ambiguous as phrased, overbroad, unduly burdensome, and harassing.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10 (ERRONEOUSLY IDENTIFIED AS INTERROGATORY NO. 4):**

Without waiving and subject to the foregoing objections, and construing this Interrogatory's request for "[e]ach and every fact" regarding the referenced proposition as seeking only the pertinent facts regarding the referenced proposition, Responding Party provides the following supplemental response:

More than an hour after Bruce Garrett observed Nicholas Detweiler stationary in his assigned seat, and while Nicholas Detweiler was asleep, Bruce Garrett called the Mount Shasta Police Department and falsely stated that Nicholas Detweiler "[i]s agitated and becoming possibly violent," that Nicholas Detweiler "[i]s brandishing [brass knuckles] to crew members and other passengers," and that Nicholas Detweiler "seems to be like a meth head, he's just kind of methed out." Bruce Garrett provided no further information to Jeremiah Capurro after Jeremiah Capurro boarded the train other than to point at Nicholas Detweiler, including that Nicholas Detweiler had returned to his seat both times Bruce Garrett directed him to do so, and that for more than an hour, Nicholas Detweiler had been asleep in his seat, not bothering anyone. Eric McNay provided no information to Jeremiah Capurro other than where Nicholas Detweiler was. While Jeremiah Capurro was deploying his taser and beating Nicholas Detweiler with a baton, Bruce Garrett intervened and

physically restrained Nicholas Detweiler from behind, preventing Nicholas Detweiler from avoiding being subjected to such force.

Discovery is ongoing, and Responding Party reserves the right to further amend or supplement this response.

**INTERROGATORY NO. 16 (ERRONEOUSLY IDENTIFIED AS INTERROGATORY NO. 6):**

State in specific detail:

a. Each and every fact that supports any contention that it was unreasonable for AMTRAK to call local authorities to remove Nicholas Detweiler from the train after he reportedly brandished brass knuckles to other passengers and BRUCE GARRETT;

b. How each fact supporting your contention legally caused your alleged harm; and

c. Each person you claim can support each alleged fact, including their names, addresses, and telephone numbers.

**RESPONSE TO INTERROGATORY NO. 16 (ERRONEOUSLY IDENTIFIED AS INTERROGATORY NO. 6):**

OBJECTION. Federal Rule of Civil Procedure 33 provides that "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Responding Party objects on the grounds that this Interrogatory, by requesting specified information with respect to "[e]ach and every fact that supports" the referenced "contention," improperly introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it; thus, each subpart is considered a separate interrogatory for purposes of numerical limitation on interrogatories, no matter how it is designated. This Interrogatory requests: (16) "Each and every fact that supports any contention that it was unreasonable for AMTRAK to call local authorities to remove Nicholas

Detweiler from the train after he reportedly brandished brass knuckles to other passengers and BRUCE GARRETT"; (17) "How each fact supporting your contention legally caused your alleged harm"; and (18) "Each person you claim can support each alleged fact, including their names, addresses, and telephone numbers." Responding Party further objects that this Interrogatory is irrelevant, inapplicable, and calls for speculation, as Responding Party is unaware of, and Requesting Party has not identified, any contention by any party "that it was unreasonable for AMTRAK to call local authorities to remove Nicholas Detweiler from the train after he reportedly brandished brass knuckles to other passengers and BRUCE GARRETT," such that this Interrogatory calls for Responding Party to respond to and support an incomplete hypothetical.

Responding Party further objects on the grounds that this Interrogatory is overbroad, harassing, unduly burdensome, and oppressive. The plain language of a request seeking "all facts" that support any legal claims, generally speaking and literally translated, includes nearly the entire universe of facts in this case, making the request improper and inappropriate. *Aldapa v. Fowler Packing Co., Inc.*, 310 F.R.D. 583, 591 (E.D. Cal. 2015) ("Contention interrogatories which 'systematically track all of the allegations in an opposing party's pleadings and that ask for each and every fact … that supports the party's allegations are an abuse of the discovery process because they are overly broad and unduly burdensome."); *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 336 (N.D. Cal. 1985) ("[A]t least in cases where defendants presumably have access to most of the evidence about their own behavior, it is not at all clear that forcing plaintiffs to answer these kinds of questions ... is sufficiently likely to be productive to justify the burden that responding can entail."); *see also id.* at 339 (the "filing of sets of contention interrogatories that systematically track all the allegations in an opposing party's pleadings is a serious form of discovery abuse."); *Tubbs v. Sacramento Cnty. Jail*,

2008 WL 863974, at *1 (E.D. Cal. Mar. 28, 2008) ("[P]laintiff is not required to present his entire case in discovery responses. 'Each and every fact' interrogatories pose problems for a responding party and a reviewing court. Parties are not tasked with laying out every jot and tittle of their evidentiary case in response to interrogatories."); *Aldapa*, 310 F.R.D. at 591 ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case …."); *Mach Sols. Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 528 (D.S.C. 2018) (Contention interrogatories "are overly broad and unduly burdensome on their face if they seek 'all facts' supporting a claim or defense, such that the answering party is required to provide a narrative account of its case …") (quoting *Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan. 2006))). This Interrogatory wrongfully calls for an expert opinion and/or disclosure of experts prior to the date for expert exchange set by the Fed. R. Civ. Pro. and/or the Scheduling Order in this case. Responding Party further objects that this Interrogatory is vague and ambiguous as phrased, overbroad, unduly burdensome, and harassing.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16 (ERRONEOUSLY IDENTIFIED AS INTERROGATORY NO. 6):**

Without waiving and subject to the foregoing objections, and construing this Interrogatory's request for "[e]ach and every fact" regarding the referenced proposition as seeking only the pertinent facts regarding the referenced proposition, Responding Party provides the following supplemental response:

More than an hour after Bruce Garrett observed Nicholas Detweiler stationary in his assigned seat, and while Nicholas Detweiler was asleep, Bruce Garrett called the Mount Shasta Police Department and falsely stated that Nicholas Detweiler "[i]s agitated and becoming possibly violent," that Nicholas Detweiler "[i]s brandishing [brass knuckles] to crew members and other passengers," and that Nicholas Detweiler "seems to be like a meth head, he's just kind of methed out." Bruce

Garrett provided no further information to Jeremiah Capurro after Jeremiah Capurro boarded the train other than to point at Nicholas Detweiler, including that Nicholas Detweiler had returned to his seat both times Bruce Garrett directed him to do so, and that for more than an hour, Nicholas Detweiler had been asleep in his seat, not bothering anyone. Eric McNay provided no information to Jeremiah Capurro other than where Nicholas Detweiler was. While Jeremiah Capurro was deploying his taser and beating Nicholas Detweiler with a baton, Bruce Garrett intervened and physically restrained Nicholas Detweiler from behind, preventing Nicholas Detweiler from avoiding being subjected to such force.

Discovery is ongoing, and Responding Party reserves the right to further amend or supplement this response.

**INTERROGATORY NO. 19 (ERRONEOUSLY IDENTIFIED AS INTERROGATORY NO. 7):**

State in specific detail:

a. Each and every fact that supports any contention that BRUCE GARRETT was not legally justified for touching Nicholas Detweiler when Nicholas Detweiler became involved in a physical altercation with JEREMIAH CAPURRO aboard the AMTRAK train;

b. How each fact supporting your contention legally caused your alleged harm; and

c. Each person you claim can support each alleged fact, including their names, addresses, and telephone numbers

**RESPONSE TO INTERROGATORY NO. 19 (ERRONEOUSLY IDENTIFIED AS INTERROGATORY NO. 7):**

OBJECTION. Federal Rule of Civil Procedure 33 provides that "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Responding Party objects on the grounds that this Interrogatory,

**INTERROGATORY NO. 31 (ERRONEOUSLY IDENTIFIED AS INTERROGATORY NO. 11):**

State in specific detail:

a. Each and every fact that supports any contention that AMTRAK breached any duty to prevent the altercation between JEREMIAH CAPURRO and Nicholas Detweiler after JEREMIAH CAPURRO boarded the train;

b. How each fact supporting your contention legally caused your alleged harm; and

c. Each person you claim can support each alleged fact, including their names, addresses, and telephone numbers.

**RESPONSE TO INTERROGATORY NO. 31 (ERRONEOUSLY IDENTIFIED AS INTERROGATORY NO. 11):**

OBJECTION. Federal Rule of Civil Procedure 33 provides that "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Responding Party objects on the grounds that this Interrogatory, by requesting specified information with respect to "[e]ach and every fact that supports" the referenced "contention," improperly introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it; thus, each subpart is considered a separate interrogatory for purposes of numerical limitation on interrogatories, no matter how it is designated. This Interrogatory requests: (31) "Each and every fact that supports any contention that AMTRAK breached any duty to prevent the altercation between JEREMIAH CAPURRO and Nicholas Detweiler after JEREMIAH CAPURRO boarded the train"; (32) "How each fact supporting your contention legally caused your alleged harm"; and (33) "Each person you claim can support each alleged fact, including their names, addresses, and telephone numbers." Responding Party further objects

that this interrogatory exceeds the 25-interrogatory limit set forth in Federal Rule of Civil Procedure 33.

Responding Party further objects on the grounds that this Interrogatory is overbroad, harassing, unduly burdensome, and oppressive. The plain language of a request seeking "all facts" that support any legal claims, generally speaking and literally translated, includes nearly the entire universe of facts in this case, making the request improper and inappropriate. *Aldapa v. Fowler Packing Co., Inc.*, 310 F.R.D. 583, 591 (E.D. Cal. 2015) ("Contention interrogatories which 'systematically track all of the allegations in an opposing party's pleadings and that ask for each and every fact … that supports the party's allegations are an abuse of the discovery process because they are overly broad and unduly burdensome."); *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 336 (N.D. Cal. 1985) ("[A]t least in cases where defendants presumably have access to most of the evidence about their own behavior, it is not at all clear that forcing plaintiffs to answer these kinds of questions ... is sufficiently likely to be productive to justify the burden that responding can entail."); *see also id.* at 339 (the "filing of sets of contention interrogatories that systematically track all the allegations in an opposing party's pleadings is a serious form of discovery abuse."); *Tubbs v. Sacramento Cnty. Jail*, 2008 WL 863974, at *1 (E.D. Cal. Mar. 28, 2008) ("[P]laintiff is not required to present his entire case in discovery responses. 'Each and every fact' interrogatories pose problems for a responding party and a reviewing court. Parties are not tasked with laying out every jot and tittle of their evidentiary case in response to interrogatories."); *Aldapa*, 310 F.R.D. at 591 ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case …."); *Mach Sols. Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 528 (D.S.C. 2018) (Contention interrogatories "are overly broad and unduly burdensome on their face if they seek 'all facts' supporting a claim or defense, such that the answering party is

required to provide a narrative account of its case …") (quoting *Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan. 2006))). This Interrogatory wrongfully calls for an expert opinion and/or disclosure of experts prior to the date for expert exchange set by the Fed. R. Civ. Pro. and/or the Scheduling Order in this case. Responding Party further objects that this Interrogatory is vague and ambiguous as phrased, overbroad, unduly burdensome, and harassing.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 31 (ERRONEOUSLY IDENTIFIED AS INTERROGATORY NO. 11):**

Without waiving and subject to the foregoing objections, and construing this Interrogatory's request for "[e]ach and every fact" regarding the referenced proposition as seeking only the pertinent facts regarding the referenced proposition, Responding Party provides the following supplemental response:

Bruce Garrett intervened to physically restrain Nicholas Detweiler from behind while Jeremiah Capurro was deploying his taser against Nicholas Detweiler, and Bruce Garrett continued to restrain Nicholas Detweiler from behind while Jeremiah Capurro beat Nicholas Detweiler with a baton approximately seventeen times, preventing Nicholas Detweiler from avoiding being subjected to such force. Throughout this time, Nicholas Detweiler was not holding or using any weapon in any manner and was attempting to defend himself from Jeremiah Capurro. Bruce Garrett continued to restrain Nicholas Detweiler from behind after the baton strikes, while Jeremiah Capurro transitioned to a firearm and held Nicholas Detweiler and Bruce Garrett at gunpoint. Throughout Bruce Garrett's physical restraint of Nicholas Detweiler, Nicholas Detweiler was not attacking anyone, and was instead requesting that Jeremiah Capurro stop beating him and that Jeremiah Capurro allow him to exit the train with his belongings. At no time did Nicholas Detweiler verbally threaten to harm anyone aboard the train, including Bruce Garrett or Jeremiah Capurro. Prior to and during Bruce Garrett's physical restraint of Nicholas Detweiler, Bruce Garrett

positioned himself near the door at the end of the train car, and remained in a position between Nicholas Detweiler and that door, despite observing Nicholas Detweiler moving backward to avoid being subjected to further force from Jeremiah Capurro, and despite having already partially disabled the door at the end of the train car. Bruce Garrett's physical restraint of Nicholas Detweiler further escalated the encounter with Jeremiah Capurro. Prior to Bruce Garrett's physical restraint of Nicholas Detweiler, and more than an hour after Bruce Garrett observed Nicholas Detweiler stationary in his assigned seat, and while Nicholas Detweiler was asleep, Bruce Garrett called the Mount Shasta Police Department and falsely stated that Nicholas Detweiler "[i]s agitated and becoming possibly violent," that Nicholas Detweiler "[i]s brandishing [brass knuckles] to crew members and other passengers," and that Nicholas Detweiler "seems to be like a meth head, he's just kind of methed out." Bruce Garrett provided no further information to Jeremiah Capurro after Jeremiah Capurro boarded the train other than to point at Nicholas Detweiler, including that Nicholas Detweiler had returned to his seat both times Bruce Garrett directed him to do so, and that for more than an hour, Nicholas Detweiler had been asleep in his seat, not bothering anyone.

Discovery is ongoing, and Responding Party reserves the right to further amend or supplement this response.

**INTERROGATORY NO. 34 (ERRONEOUSLY IDENTIFIED AS INTERROGATORY NO. 12):**

State in specific detail:

a. Each and every fact that supports any contention that before BRUCE GARRETT touched Nicholas Detweiler, BRUCE GARRETT did not reasonably believe that he was acting in the defense of himself or others;

b. Each and every fact that supports any contention that before BRUCE GARRETT touched Nicholas Detweiler, BRUCE GARRETT did not have a

and during Bruce Garrett's physical restraint of Nicholas Detweiler, Bruce Garrett positioned himself near the door at the end of the train car, and remained in a position between Nicholas Detweiler and that door, despite observing Nicholas Detweiler moving backward to avoid being subjected to further force from Jeremiah Capurro, and despite having already partially disabled the door at the end of the train car. Bruce Garrett's physical restraint of Nicholas Detweiler further escalated the encounter with Jeremiah Capurro. Prior to Bruce Garrett's physical restraint of Nicholas Detweiler, and more than an hour after Bruce Garrett observed Nicholas Detweiler stationary in his assigned seat, and while Nicholas Detweiler was asleep, Bruce Garrett called the Mount Shasta Police Department and falsely stated that Nicholas Detweiler "[i]s agitated and becoming possibly violent," that Nicholas Detweiler "[i]s brandishing [brass knuckles] to crew members and other passengers," and that Nicholas Detweiler "seems to be like a meth head, he's just kind of methed out." Bruce Garrett provided no further information to Jeremiah Capurro after Jeremiah Capurro boarded the train other than to point at Nicholas Detweiler, including that Nicholas Detweiler had returned to his seat both times Bruce Garrett directed him to do so, and that for more than an hour, Nicholas Detweiler had been asleep in his seat, not bothering anyone.

Discovery is ongoing, and Responding Party reserves the right to further amend or supplement this response.

Dated: July 10, 2026

**LAW OFFICES OF DALE K. GALIPO**

By: *<u>/s/ Dale K. Galipo</u>*
Dale K. Galipo
Benjamin S. Levine
*Attorneys for Plaintiff*