DERICK E. KONZ, SB No. 286902
dkonz@akk-law.com
WILLIAM J. BITTNER, SB No. 292056
wbittner@akk-law.com
ISABELLE P. CARMICHAEL, SB No. 367390
icarmichael@akk-law.com
**ANGELO, KILDAY & KILDUFF, LLP**
Attorneys at Law
601 University Avenue, Suite 150
Sacramento, CA 95825
Telephone: (916) 564-6100
Telecopier: (916) 564-6263

Attorneys for Defendants CITY OF MT. SHASTA and JEREMIAH CAPURRO

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JULIA DETWILER,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF MT. SHASTA, et al.,<br><br>Defendants. | Case No.: 2:24-CV-03100-WBS-SCR<br><br>**DEFENDANTS CITY OF MT. SHASTA AND JEREMIAH CAPURRO'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>**DATE: December 21, 2026**<br>**TIME: 1:30 P.M.**<br>**DEPT: 5, 14th Floor** |

Defendants City of Mt. Shasta and Jeremiah Capurro submit this reply to Plaintiff's opposition (ECF No. 35) to Defendants motion for summary judgment (ECF No. 31).

///

///

# I. REPLY

## A. Shots 1-4 Were Reasonable as a Matter of Law.

Detweiler put brass knuckles on his right hand and threw a right-hand punch at the head of the Amtrak train conductor ("Garrett") who was about one foot away. This is not in dispute and justified deadly force as a matter of law.

Plaintiff's rebuttal is that Detweiler did not actually strike Garrett. See Plaintiff's Response to City UMF 55. This is irrelevant because the standard does not require that a suspect succeed in causing serious injury before an officer can use deadly force. The standard is whether "the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir.1994); *Hayes v. County of San Diego*, 736 F.3d 1223, 1234 (9th Cir. 2013) ("[T]hreatening [someone] with a weapon does justify the use of deadly force."); *Smith v. City of Hemet*, 394 F.3d 689, 704 (9th Cir. 2005) (en banc) ("[W]here a suspect threatens [someone] with a weapon such as a gun or a knife, the officer is justified in using deadly force."); *Estate of Strickland v. Nev. Cty*., 69 F.4th 614, 620 (9th Cir. 2023) ("If the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat."), quoting *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013); *Wilkinson v. Torres*, 610 F.3d 546, 553 (9th Cir. 2010) ("the Fourth Amendment does not require omniscience," and absolute certainty of harm need not precede an act of self-protection), quoting *Elliott v. Leavitt*, 99 F.3d 640, 644 (4th Cir. 1996).

It is undisputed that Detweiler committed assault with a deadly weapon[1] and Officer Capurro responded with deadly force by firing four shots. No reasonable jury could find that unreasonable.

---

[1] See Cal. Penal Code § 240 (defining assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another"); Cal. Penal Code § 245 (defining assault with a deadly weapon as "an assault upon the person of another with a deadly weapon or instrument"); *People v. Aguilar*, 16 Cal.4th 1023, 1037 (1997) (brass knuckles may be a deadly weapon and can support a Penal Code § 245(a)(1) conviction for assault with a deadly weapon); *Villanueva v. Figueroa*, No. CV 13-4811-ABC (DFM), 2014 U.S. Dist. LEXIS 154000, at *20 (C.D. Cal. July 9, 2014); *In re David V.*, 48 Cal. 4th 23, 26 (2010) ("Typical metal knuckles,

**B. Shots 5-6 Were Reasonable as a Matter of Law.**

After Officer Capurro fired four shots, Detweiler and Garrett went to the ground and Detweiler had his arm around Garrett's neck in a manner that any reasonable officer would perceive as an attempt to choke Garrett. This is on video and not in dispute. It justified a deadly force response as a matter of law.

Plaintiff's rebuttal is that it does not appear that Detweiler's arm was "pressing against Garrett's neck" and that their police expert opines that he does not see a chokehold on video. See Plaintiff's Response to City UMF 58. Plaintiff's police expert's opinion about what the video shows is irrelevant, non-expert, and unqualified. Whether Detweiler's arm was actually "pressing against Garrett's neck" is irrelevant because the standard is whether a reasonable officer would have probable cause to believe that Detweiler posed an immediate threat, not whether, in hindsight, Detweiler was actually choking Garrett to death. *Scott*, 39 F.3d at 914; *Saucier v. Katz*, 533 U.S. 194, 206 (2001) ("Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of" an immediate threat, and "in those situations courts will not hold that they have violated the Constitution.").

Any reasonable officer would have had probable cause to believe that Detweiler was attempting to choke Garrett, a threat of death or serious bodily injury particularly after Detweiler tried to punch Garrett with brass knuckles approximately 3 seconds before. Officer Capurro fired two shots in quick succession (less than two seconds apart). This is on video, not in dispute, and reasonable as a matter of law.

**C. Plaintiff's Attempt to Parse Shots 5 and 6 Into Separate Claims was Raised for the First Time in Opposition to the Summary Judgment Motion.**

Plaintiff attempts to parse shots five and six into separate volleys, thereby asserting, for the first time, separate Fourth Amendment excessive force claims. The complaint (ECF No. 1) does not allege a separate Fourth Amendment claim for shot six and the alleged facts do not parse out

---

manufactured as weapons, are deemed inherently dangerous so that mere possession is illegal regardless of the defendant's purposes.").

shot six. Because this new claim was not pled in the complaint, it was not considered in the motion for summary judgment and should not be considered by the Court. See *Eyre v. City of Fairbanks*, No. 23-35206, 2024 U.S. App. LEXIS 19770, at *4-5 (9th Cir. Aug. 7, 2024) ("The complaint contains no hint that the officers' volleys should be evaluated separately."); *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings."); *see also Trishan Air, Inc. v. Federal Ins. Co.*, 635 F.3d 422, 435 (9th Cir. 2011) (affirming dismissal of claim that was raised for the first time in opposition to summary judgment); *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("[O]ur precedents make clear that [when] the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court."); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); *Fakhouri v. Parsons Transp. Grp.*, No. EDCV 24-1065, 2026 LX 67162, at *13 (C.D. Cal. Feb. 18, 2026) ("all claims must be pled as separate and individuals causes of action and should not be combined"); *Murdouch v. Via Transp.*, No. 3:25-cv-05925-DGE, 2026 LX 291968, at *5 n.3 (W.D. Wash. Apr. 28, 2026) ("This fact is not alleged in the complaint; therefore, the Court does not consider it.").

**D. Nonetheless, Shot Six Was Reasonable as a Matter of Law.**

Plaintiff's police expert opines that shot six was a separate volley. See Plaintiff's Response to City UMF 59. This is a non-expert, unqualified opinion.

Less than two seconds elapsed between shots five and six and Detweiler was still in close enough proximity to Garrett that any reasonable officer would have perceived that he still posed a serious threat; he had brass knuckles, tried to punch Garrett with them less than five seconds earlier, and was choking Garrett less than two seconds earlier. Officer Capurro was justified in firing to end the threat and was not required to stop firing until the threat ended. *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014); *Saucier*, 533 U.S. at 205 ("If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, . . . the officer would be justified in using more force than in fact was needed.").

Every reasonable officer would have perceived that Detweiler posed a serious threat at the moment shot six was fired. Shot six was reasonable as a matter of law.

**E. Looking Beyond the Moment of the Shooting, the Conclusion Remains the Same.**

Additional factors that the Ninth Circuit has considered (severity of the crime, clear warnings, active resistance, relative culpability, mental illness, and alternative methods) do not change the conclusion that deadly force was reasonable as a matter of law.

Plaintiff does not dispute that Detweiler was reported by Amtrak staff to have been threatening passengers and staff with brass knuckles and requested that Mt. Shasta Police Department remove him from the train. See Plaintiff's Response to City UMF 4. Plaintiff does not oppose dismissal of the false arrest claim, thus conceding that Officer Capurro had authority to arrest Detweiler. The video is clear that Detweiler ignored several lawful commands to keep his hands up and not touch anything, grabbed a bag that contained unknown items, struggled with Officer Capurro who attempted to prevent him from accessing the bag, and grabbed Officer Capurro's taser. Plaintiff does not dispute that preventing Detweiler's access to the bag was appropriate and that Detweiler grabbing Officer Capurro's taser constituted a felony. See Plaintiff's Response to City UMFs 31-32. The video is clear that Officer Capurro attempted less-lethal options which were ineffective. Plaintiff does not provide evidence to reasonably dispute these facts. See Plaintiff's Response to City UMFs 14-35.[2]

Plaintiff argues that Detweiler's alleged mental illness makes the shooting unreasonable. However, there is no admissible evidence that Detweiler had a mental illness, that Officer Capurro knew Detweiler, or much less, that he knew of Detweiler's alleged mental illness. *Cf. Estate of Strickland v. Nev. Cty.*, 69 F.4th 614, 621 (9th Cir. 2023) (finding deadly force reasonable despite a record that officers "remembered Strickland from his prior detentions, and they knew he suffered

---

[2] Plaintiff disputes that Detweiler punched Officer Capurro in the face. See Plaintiff's Response to City UMF 41. This is not dispositive of the deadly force analysis given the immediate threat that Detweiler posed at the time of the shooting and all other undisputed pre-shooting facts noted above. Alternatively, Plaintiff does not provide sufficient evidence to create a reasonable dispute in light of photos of Officer Capurro's face after the incident.

from mental health issues."). Moreover, even if a reasonable officer would have suspected a mental health issue, it does not change the deadly force conclusion because Detweiler still posed an immediate threat of death or serious bodily injury when he tried to punch and choke Garrett. *See Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001) (there is no "per se rule" that mentally ill persons must be afforded different treatment than armed criminals); *Blanford v. Sacramento Cty.*, 406 F.3d 1110, 1117-18 (9th Cir. 2005) (finding the use of deadly force against a mentally disturbed individual armed with a sword objectively reasonable); *Estate of Strickland v. Nev. Cty.*, No. 2:21-cv-00175-MCE-AC, 2021 LX 96070, at *17-18 (E.D. Cal. Sep. 28, 2021) ("Despite the likelihood of Strickland's ongoing mental disturbance, it was not objectively unreasonable for officers to consider the presence of a deadly weapon a priority. … That Strickland may have been struggling with mental health issues made the [replica] rifle he was carrying no less deadly in the objectively reasonable perspective of Defendants."); *Elifritz v. Fender*, 460 F. Supp. 3d 1088, 1114 (D. Or. 2020) (holding that the decedent "posed an immediate threat of serious injury or death to the officers, and it was reasonable for the officers to respond with deadly force, even if [the decedent] was experiencing a mental health crisis."). Plaintiff's mental health argument does not change the conclusion that deadly force was reasonable as a matter of law.

Plaintiff argues that failure to wait for backup or speak to Detweiler in a calmer tone render the use of deadly force unreasonable. However, there is only speculation that any of those would have changed the outcome and those criticisms do not change the fact that Detweiler was given several clear commands to get on the ground at gunpoint and then put on brass knuckles and tried to punch and choke Garrett. *See Estate of Strickland*, 69 F.4th at 620 (faced with a record that "officers failed to employ de-escalation techniques … did not wait for supervisors or call in for backup with crisis or mental health training … [and] seemingly exacerbated the situation by aggressively shouting directions at Strickland upon their arrival," finding, "[s]o the bulk of the *Graham* factors favor Strickland. The question is whether the immediacy of the threat that Strickland posed outweighs those considerations here. We think it does."). These criticisms do not change the conclusion that deadly force was reasonable as a matter of law. This is dispositive of all force claims.

**F. Officer Capurro is Entitled to Qualified Immunity on the Fourth Amendment Claim.**

It is Plaintiff's burden to point the court to a prior case with sufficiently similar facts where deadly force was found unconstitutional. Plaintiff's opposition fails to do so because there is no clearly established law that it was a constitutional violation for an officer to shoot a suspect that swings a punch with brass knuckles at a civilian on a train and then appears to try and choke him. Moreover, in regard to Plaintiff's argument to parse shots five and six into separate claims, the legal line there is, "murky" (i.e., not "clearly established"). See *Zion v. Cty. of Orange*, 874 F.3d 1072, 1075 (9th Cir. 2017) (the "boundary" line is "murky" when it comes to defining exactly when the permissible use of deadly force against a suspect who "poses an immediate threat" must be halted). No case clearly established a rule that any of Officer Capurro's shots were unreasonable beyond debate. Officer Capurro is entitled to qualified immunity. This is dispositive of all 42 U.S.C. § 1983 claims.

**G. No Reasonable Jury Could Find that the Use of Deadly Force Shocks the Conscience.**

Plaintiff argues that Officer Capurro "had time to deliberate before using deadly force" and therefore the deliberate indifference (and not purpose to harm) standard should apply. The first four shots were fired immediately in response to Detweiler swinging at Garrett with brass knuckles. That required a "snap judgment because of an escalating situation." *Hayes*, 736 F.3d at 1230. Shots five and six were fired less than three seconds later and within less than two seconds of each other in response to Detweiler appearing to choke Garrett on the ground and still being in very close proximity to him. This was another snap judgment in response to an escalating situation. Plaintiff cites no case where such a quick response and rapidly evolving situation was analyzed under the deliberate indifference standard. The purpose to harm standard must be applied.

Under that standard, the shooting was not a Fourteenth Amendment violation as a matter of law. Plaintiff does not argue that shots one through four violated the Fourteenth Amendment and therefore concedes those. Plaintiff argues that shots five and six violated the Fourteenth Amendment because Detwiler "did not reasonably appear to be harming" Garrett; however, the video clearly shows Detweiler with his arm around Garrett's neck in a manner that any reasonable officer would perceive as an attempt to choke him. There is no evidence that Officer Capurro fired

shots five and six with a purpose to harm unrelated to a legitimate law enforcement objective (to stop the threat to Garrett). No reasonable jury could find that Officer Capurro's use of deadly force was a Fourteenth Amendment violation.

**H. Officer Capurro is Entitled to Qualified Immunity on the Fourteenth Amendment Claim.**

Because the standards under the Fourth and Fourteenth Amendments are different, a violation of the Fourth Amendment would not clearly establish a violation of the Fourteenth Amendment. *See Barrera v. City of Woodland*, No. 2:18-cv-00329-JAM-KJN, 2023 U.S. Dist. LEXIS 102612 at *9-13 (E.D. Cal. June 12, 2023). Plaintiff does not directly address whether qualified immunity applies to the Fourteenth Amendment claim and provides no case law to support a clearly established Fourteenth Amendment violation under these circumstances. Officer Capurro is entitled to qualified immunity on the Fourteenth Amendment claim.

**I. No Reasonable Jury Could Find that Officer Capurro Failed to Render Medical Aid.**

"Due process requires that police officers seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital." *Contra Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986). There is no dispute that Officer Capurro summoned medical assistance within approximately twenty seconds after shots were fired and that medical responders boarded the train and began providing medical care to Detweiler. Plaintiff's argument is that Officer Capurro asked that Garrett (also shot) be taken to the hospital by the first arriving ambulance. This does not state a failure to render medical aid claim because there is no evidence that Officer Capurro actually prevented medical responders from rendering aid to Detweiler.

Officer Capurro summoned medical care and did not block Detweiler from receiving medical care. Officer Capurro requests dismissal of this claim.

**J. Plaintiff Does Not Address and Therefore Concedes the Unlawful Detention Claim.**

Plaintiff's second claim alleges that Officer Capurro did not have reasonable suspicion or probable cause that Detweiler committed a crime and therefore Officer Capurro falsely detained

and/or arrested Detweiler. Defendants' opposition argued for dismissal of this claim based on Amtrak's report of the brass knuckles and several clear indicators of probable cause for serious crimes captured on video. Plaintiff's opposition does not address this claim and therefore concedes dismissal.

**K. No Reasonable Jury Could Find that Detweiler's ADA Rights Were Violated.**

Plaintiff presents no admissible evidence that Detweiler had a disability at the time of this incident that qualified him for ADA rights. Plaintiff's own testimony is an unqualified medical opinion and one note on a jail intake form is hearsay and made by someone whose qualifications are unknown. This record does not establish a qualified disability. If Detweiler had a qualified disability, Plaintiff had ample opportunity during the discovery period to disclose a medical record from a doctor that stated the diagnosis, but did not. There is no admissible record of any qualified disability.

Moreover, Detweiler posed a "direct threat" that required no accommodation from the start of this encounter until the end. 28 C.F.R. § 35.139(a) (a public entity is not required to "permit an individual to participate in or benefit from the services, programs, or activities of that public entity when that individual poses a direct threat to the health or safety of others.").

No reasonable jury could find that Officer Capurro could have made an individualized assessment of Detweiler's alleged disability during the short time frame on the train, understood it, and had time to ascertain what accommodation to make and whether any accommodation would have mitigated the risk posed by Detweiler. See 28 C.F.R. § 35.139(b) ("[i]n determining whether an individual poses a direct threat to the health or safety of others, a public entity must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk."); *Harper v. Cty. of Merced*, No. 1:18-CV-00562-LJO-SKO, 2018 U.S. Dist. LEXIS 191567, 2018 WL 5880786, at *7 (E.D. Cal. Nov. 8, 2018) (collecting cases to find that where "exigent circumstances were present, courts have rejected ADA reasonable accommodation

claims as a matter of law").

This is a case about an armed, violent and dangerous suspect that posed a direct threat to everyone around him on a train. There is nothing more than speculation that he acted this way because of a qualifying disability and, even if there were, the video makes clear that there was no time, opportunity, or requirement for an ADA accommodation by Officer Capurro on the scene. No reasonable jury could find the City liable for an ADA violation.

**L. No Reasonable Jury Could Find Officer Capurro Negligent.**

Plaintiff argues that Officer Capurro should have waited for backup, should not have awoken Detweiler, should not have shined a flashlight on him, should have spoken in a calmer tone, provided further explanation, not tased him, and not used his baton. Plaintiff's argument relies heavily on a foundation that Detwiler was so mentally ill that he could not understand the commands and "foreseeably act[ed] in desperation." Yet, they present no credible medical evidence that he was mentally ill. Nonetheless, these criticisms do not change the conclusion that deadly force was reasonable as a matter of law. *See Hayes*, 57 Cal. App. 4th at 626 (negligence liability only arises if the tactical conduct and decisions leading up to the use of deadly force show, as part of the totality of circumstances, that the use of deadly force was unreasonable).

Detweiler was given multiple commands to get on the ground at gunpoint by a clearly identified officer, then put on brass knuckles and tried to punch and choke Garrett. Deadly force in response to this immediate threat was reasonable as a matter of law regardless of Plaintiff's pre-shooting tactic criticisms. *See Ryburn v. Huff*, 565 U.S. 469, 477 (2012) ("[J]udges should be cautious about second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation."); see also Section E, *supra*.

**M. No Reasonable Jury Could Find that Officer Capurro Violated the Bane Act.**

There is no evidence that Officer Capurro had a "specific intent to violate a constitutional right." *Chinaryan v. City of Los Angeles*, 113 F.4th 888, 907 (9th Cir. 2024). Officer Capurro was clearly responding to a report of an individual with brass knuckles, he had authority to detain him, attempted to with verbal commands and less-lethal options, provided several warnings, and only resorted to deadly force after Detweiler tried to punch Garrett with brass knuckles and choke him.

There is no evidence of requisite specific intent to deprive Detweiler of any rights, only evidence that Officer Capurro was attempting do his job and save Garrett from death or serious bodily injury. Officer Capurro requests dismissal of this claim.

**N. The Fact that Garrett was Shot and Settled a Lawsuit is Irrelevant.**

Plaintiff includes several facts and arguments that the shooting of Detweiler was unreasonable because Garrett was also shot and settled a lawsuit with the City. This is irrelevant. The standard is whether Detweiler posed an immediate threat of death or serious bodily injury to Garrett at the time of the shooting. Whether Garrett was shot and settled a lawsuit with the City has no bearing on that issue.

## II. CONCLUSION

Video is clear that Detweiler attempted to kill or serious injure Garrett. No reasonable jury could find a deadly force response under those circumstances unreasonable, negligent, or that it shocks the conscience. In the alternative, Officer Capurro is entitled to qualified immunity. Officer Capurro almost immediately summoned medical aid for Detweiler, precluding the failure to render medical aid claim. Officer Capurro and the City of Mt. Shasta request summary judgment on all claims.

Dated: November 9, 2026

ANGELO, KILDAY & KILDUFF, LLP

*/s/ Derick E. Konz*

By:______________________________

DERICK E. KONZ
Attorneys for Defendants CITY OF MT. SHASTA and OFFICER CAPURRO