Michael E. Murphy, Esq. (Bar #174408)
Selim Mounedji, Esq. (Bar #173347)
SIMS LAW FIRM, LLP
101 Pacifica, Suite 210
Irvine, California 92618
(949) 253-7900
(949) 253-7930 - FAX

Attorneys for Defendants NATIONAL RAILROAD PASSENGER CORPORATION service mark AMTRAK and BRUCE GARRETT

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA DETWEILER, individually and as successor-in-interest to Nicholas Detweiler, deceased,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF MOUNT SHASTA; JEREMIAH CAPURRO; NATIONAL RAILROAD PASSENGER CORPORATION; BRUCE GARRETT; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:24-cv-03100-WBS-SCR<br><br>**DEFENDANT NATIONAL RAILROAD PASSENGER CORPORATION SERVICE MARK AMTRAK AND BRUCE GARRETT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>Date: December 21, 2026<br>Time: 1:30 p.m.<br>Courtroom: 5, 14th Floor<br><br>Complaint Filed: November 7, 2024<br>Trial Date: March 9, 2027 |

Defendants National Railroad Passenger Corporation service mark Amtrak (Amtrak) and Bruce Garrett (Garrett) submit the following Reply to Plaintiff's Opposition to their Motion for Summary Judgment.

## 1. INTRODUCTION

Plaintiff's Opposition to Defendants Amtrak and Garrett's Motion for Summary Judgment improperly attempts to raise a triable issue of material fact by raising grounds not at-issue in the complaint. *See Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2006);*

*Freeman v. Cont'l Gin Co., 381 F.2d 459, 470 (5th Cir. 1967); Carter v. Ford Motor Co., 561 F.3d 562, 567–68 (6th Cir. 2009); Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996*).

Even if Plaintiff could inject her new, unpled theory of liability at this late stage of litigation, it fails on the undisputed facts. Plaintiff does not and cannot allege that Garrett's account to the police was false, nor can she deny that Decedent was a violent convicted felon who criminally brandished brass knuckles on the train three times—twice at passengers and once at Garrett, remained in possession of that weapon during Garrett's call, acted violently toward Garrett and Officer Capurro while resisting arrest, and was shot while throwing a brass-knuckle-clad punch at Garrett's head .

Plaintiff's theory does not rest on any claim that Garrett's account was false. Instead, she contends that Garrett had a duty, when seeking police help, to give the dispatcher an account most favorable to the perpetrator of a crime—a duty she cites no authority to support and one that cannot be squared with the First Amendment or with the absolute privilege for statements to law enforcement under California Civil Code section 47. As shown below, Plaintiff pled no facts to defeat that privilege, and her own expert conceded that Garrett could not be faulted for not providing more or different information. See Decl. of Orrey, Ex. B, ECF No. 31-6.

Finally, Plaintiff's theory is sheer speculation. No evidence suggests that additional information or the presence of more officers would have averted Decedent's own conduct, which provoked the shooting in the first place.

Accordingly, Amtrak and Garrett request that this Court grant their Motion for Summary Judgment in its entirety.

**2. PLAINTIFF CANNOT RAISE A TRIABLE ISSUE OF MATERIAL FACT BASED ON AN UNPLED NEW NEGLIGENCE THEORY BASED ON SPEECH.**

It is well settled that a party cannot oppose summary judgment by raising claims not at-issue in the pleadings. *See Wasco Prods.,* 435 F.3d at 992; *Freeman*, 381 F.2d at 470; *Carter*, 561 F.3d at 567–68; Shanahan, 82 F.3d at 781. Here, it is undisputed that Plaintiff never pled any theory based on Garrett's allegedly incomplete call for help to the Mt. Shasta Police Department. Plaintiff cannot first raise this claim in opposition to a motion for summary judgment.

If Plaintiff wanted to raise a new theory, her sole avenue was to file for leave to amend, which she never did. Plaintiff's insertion of this new ground in her Opposition to Defendants' Motion for Summary Judgment cannot replace a formal request for leave to amend. Even if it could, it is too little too late. Courts do not allow amendment of the pleadings once discovery is complete and a case has progressed to the summary judgment stage. *See Wasco Prods.*, 435 F.3d at 992; *Freeman, 381 F.2d at 470; Carter, 561 F.3d at 567–68; Shanahan, 82 F.3d at 781.*

Plaintiff's claim that Amtrak and Garrett had notice of their claim through discovery is non-availing. Plaintiff's new theory is not an ordinary negligence claim. It is a new cause of action based on speech. Because Plaintiff's new claim is based on an activity that the First Amendment of the United States Constitution protects, it requires Plaintiff to plead and prove the specific elements of the new cause of action. For the reasons set forth below, even if Plaintiff had attempted to timely plead such a cause of action, her pleading never would have survived a motion to strike or dismiss pursuant to Federal Rule of Civil Procedure 12(b).

**3. PLAINTIFF CANNOT AS A MATTER OF LAW STATE A CAUSE OF ACTION FOR NEGLIGENCE BASED ON GARRETT'S CALLS FOR POLICE HELP.**

The First Amendment to the Constitution of the United States generally shields a speaker from tort liability based on the content of the speech. *See* U.S. Const. amend. I; *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 264 (1964); *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (per curiam). Because of the Constitutional implications of lawsuits premised on speech, courts have limited such actions to a few narrowly crafted exceptions. The First Amendment protects even speech that advocates the use of force or breaking the law unless it is directed to inciting or producing imminent lawless action and is likely to incite or produce such action. *See Brandenburg*, 395 U.S. at 447. Plaintiff has presented no evidence or argument that her action meets this standard. Indeed, what the facts show is that Decedent himself was inciting and producing imminent lawless action, which was a clear and present danger to the safety of Amtrak's passengers.

The fundamental flaw with Plaintiff's theory is that it does not seek to hold Garrett liable for making a false statement to the police. Instead, Plaintiff seeks to hold Garrett liable for not providing additional or more specific information that she speculates would have led to a different outcome.

Plaintiff does not and cannot provide any evidence to suggest that Garrett owed her or Decedent any such duty of care to Plaintiff. Indeed, even Plaintiff's police tactics and use of force expert Scott Defoe testified that he did not fault Garret for not providing more or different information.

**4. GARRETT'S STATEMENTS TO THE 911 DISPATCHER WERE PRIVILEGED UNDER CALIFORNIA LAW.**

California Civil Code section 47 provides that "A privileged publication or broadcast is one made:

> **(b)** In any . . . other official proceeding authorized by law . . . , except as follows:
>
> * * *
>
> > (5) This subdivision does not make privileged any communication between a person and a law enforcement agency in which the person makes a **false report** that another person has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement intervention, **knowing** that the report is false, or with **reckless disregard** for the truth or falsity of the report.
>
> **(c)** In a communication, without **malice**, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information.

Cal. Civ. Code § 47(b)(5), (c) (emphasis added).

The literal text of Civil Code Section 47(b)(5) explicitly protects reporting that a person "has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement intervention." (*Ibid.*) Carrying concealed, illegal brass knuckles on a public transit vehicle is an ongoing, active criminal offense every second the passenger sits on the train. Because the Decedent was actively engaged in conduct requiring police intervention at the very moment of the report, Garrett's call satisfies the statutory language—even if the parties contest specific phrasing or timing during the incident call.

With the exception of malicious prosecution, the privilege set forth in Section 47 applies to all actions premised on the privileged communication, including negligence. *See Rosenthal v. Irell & Manella*, 135 Cal. App. 3d 121, 125 (1982). Garrett's communication in this case was a truthful communication by a conductor on a train to a police dispatcher seeking assistance to remove a passenger with a violent criminal past who had brandished a deadly weapon to passengers and

Garrett, and who was still in possession of the deadly weapon at the time of the call. Plaintiff has not articulated any grounds that would enable her to defeat that privilege.

The privilege is not confined to statements made in a courtroom. Federal courts applying California law have uniformly held that Section 47's absolute privilege reaches communications made to law enforcement to report suspected criminal activity, including calls placed to a police dispatcher. *See Yates v. Allied Int'l Credit Corp.*, 578 F. Supp. 2d 1251, 1254 (S.D. Cal. 2008) (holding that "section 47(b) is not limited to statements made in a courtroom" and that California law "gives all persons the right to report crimes to the police . . . even if the report is made in bad faith"). The privilege applies to police reports "including allegedly false ones," because "[t]he relevant forum . . . for determining the truth of a police report is a criminal trial," not a civil action. *Id.* Garrett's call to the Mt. Shasta dispatcher—a communication made to prompt law-enforcement action against a passenger engaged in criminal conduct—falls squarely within the privilege.

Fatal for Plaintiff's theory, the privilege extends not only to what a caller says, but to what a caller omits. In *Forro Precision, Inc. v. International Business Machines Corp.*, 745 F.2d 1283 (9th Cir. 1984), the Ninth Circuit rejected the very argument Plaintiff advances here—that the Section 47 privilege "extends only to affirmative disclosures and not to selective failures to disclose information." *Id.* at 1285. Even accepting that the defendant had "deliberately withheld" from police information that "might have dissuaded them" from acting, the court held that it could make "no exception from the privilege for such deception by inaction." *Id.* The court reasoned that it saw "no reason why the absolute privilege of [Section 47] should protect the speaker who baldly and maliciously lies to the authorities, yet exclude one who speaks a half-truth," and that recognizing any such exception "would tend to undermine and destroy the [Section 47] privilege, contrary to California's manifest policy of resolving doubts in favor of extending that privilege." *Id.*

*Forro Precision* is dispositive. If the privilege protects a party who *intentionally and deliberately* conceals material information from the police, it necessarily protects Garrett, who is accused only of *negligently* failing to volunteer additional details to the dispatcher. Plaintiff's theory—that Garrett had a duty to provide a more complete account—is precisely the "fraudulent silence" exception that the Ninth Circuit squarely refused to engraft onto Section 47. Conduct far

more culpable than Garrett's alleged omission is absolutely privileged; his conduct is a fortiori privileged.

Nor does the fact that the police response ultimately harmed a third party remove the communication from the privilege's protection. In *Yates*, police forced the plaintiff from his home at gunpoint, handcuffed him, and arrested him when they responded to the defendant's false report. 578 F. Supp. 2d at 1254. The court nonetheless held that Section 47(b) barred the plaintiff's claims for negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress to the extent they rested on the privileged communication, because "section 47(b) . . . bars civil liability for any tort claim based upon a privileged communication," and the harm flowed from the police response to that communication. *Id.* at 1256. The court further held that the privilege "cannot be defeated by amendment." *Id.* at 1257. Here, as in *Yates*, Plaintiff's negligence theory depends entirely on Garrett's privileged call—without it, no officers would have been dispatched and no shooting would have occurred—and the privilege therefore bars it regardless of the harm alleged and regardless of any attempt to replead. The sole tort that survives the privilege is malicious prosecution, *see id.* at 1255, which Plaintiff has neither pled nor could establish on these facts.

## 5. PLAINTIFF'S NEW THEORY OF LIABILITY IS SHEER SPECULATION THAT IS NOT SUPPORTED BY THE EVIDENCE.

Plaintiff's new theory is based on sheer speculation that any additional information would have made any difference. Specifically, Plaintiff alleges a tenuous causation chain that had Garrett provided additional information, it would have resulted in having more officers available, which in turn would have prevented Decedent's conduct and would have prevented Officer Capurro or another officer from firing their weapon.

First, Plaintiff's argument is totally illogical. The transcript of the 911 call by Garrett shows that Garrett communicated all facts that he deemed material to the situation. Garrett did not refuse to answer any questions from the dispatcher, and the dispatcher did not ask for more information. Moreover, the evidence proves that Garrett told the dispatcher he had called earlier ("Yeah, when we left, we called the UP to ask for help and they said that nobody was available until Mount Shasta.") and told the dispatcher, "I called because I got reports that he had been arrested last year for assaulting

a cop, so I just want to make sure you guys got a little extra heads up on this one." See Decl. of Orrey, Ex. B, ECF No. 31-6. It is absurd for Plaintiff to accuse Garrett of withholding information that would have resulted in more police at the scene when he actually suggested that more police might be necessary.

Second, the evidence does not support Plaintiff's speculative argument. On the contrary, the uncontroverted facts and the video of the incident strongly imply otherwise. Decedent was a convicted felon with a history of violence that included assault on multiple police officers and jail staff. Decedent's conduct here was consistent with his prior criminal assaults. Decedent was aggressive, refused to obey lawful orders of the arresting officer, and proceeded to assault the arresting officer. There is no evidence that remotely suggests more officers could have averted Decedent's actions that provoked the shooting in the first place.

In the end, no amount of skillful pleading can obfuscate the fact that Decedent was a danger to the Amtrak passengers and employees. Remarkably, Plaintiff herself once called the police to arrest her own son to protect her own safety when he brandished a knife at her. Yet she now seeks to hold Garrett liable for calling police to protect himself and Amtrak's passengers. Decedent's own conduct defeats Plaintiff's liability claims, and the Court should grant summary judgment.

**6. CONCLUSION**

For all the foregoing reasons, Defendants Amtrak and Garrett respectfully request that this Court grant their Motion for Summary Judgment in its entirety.

DATED: November 9, 2026 SIMS LAW FIRM, LLP

By /s/ *Selim Mounedji*
Selim Mounedji
Attorneys for Defendant BRUCE GARRETT and NATIONAL RAILROAD PASSENGER CORPORATION service mark AMTRAK

**PROOF OF SERVICE**
**USDC Case No. 2:24-cv-03100-WBS-SCR**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 101 Pacifica, Suite 210, Irvine, CA 92618.

On November 9, 2026, I served the foregoing documents on the interested parties in this action:

**DEFENDANT NATIONAL RAILROAD PASSENGER CORPORATION SERVICE MARK AMTRAK AND BRUCE GARRETT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

[X] by placing the true copies thereof enclosed in sealed envelopes addressed as listed below:

**See Attached Service List**

[ ] **BY MAIL:** I deposited such envelope in the mail at Irvine, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, said correspondence is deposited with the United States Postal Service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business; and there is delivery service by United States mail at the place so addressed.

I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. Executed on November 9, 2026, at Irvine, California.

[ X] **BY E-MAIL TRANSMISSIO**N: I caused the above document to be emailed to counsel and sent from JMortimore@sms-law.com executed on November 9, 2026, at Irvine, California

[ ] **BY E-SERVICE:** The undersigned hereby certifies that a true and correct copy of the forgoing document was filed with the Court and served electronically through pursuant to the United States District Court CM/ECF rules to all counsel of record to those registered to receive a Notice of Electronic Filing for this case on November 9, 2026.

[X] **(Federal):** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed November 9, 2026, at Irvine, California.

/s/ *Jodie A. Mortimore*

Jodie A. Mortimore

SERVICE LIST
*Detweiler v. NRPC, et al*

Dale K. Galipo, Esq.
Benjamin S. Levine, Esq.
LAW OFFICES OF DALE K. GALIPO
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
(818) 347-3333
(818) 347-4118 - Facsimile
dalekgalipo@yahoo.com
blevine@galipolaw.com
slaurel@galipolaw.com
Attorneys for Plaintiff JULIA DETWEILER, individually and as successor-in-interest to Nicholas Detweiler, deceased

Derick E. Konz, Esq.
William J. Bittner, Esq.
ANGELO, KILDAY & KILDUFF, LLP
601 University Avenue, Suite 150
Sacramento, CA 95825
(916) 564-6100
(916) 564-6263 - Facsimile
dkonz@akk-law.com
wbittner@akk-law.com
mgrace@akk-law.com
skelly@akk-law.com
rkhan@akk-law.com
Attorneys for Defendant CITY OF MT. SHASTA AND JEREMIAH CAPURRO

Stephanie L. Quinn, Esq.
Collin S. McCarthy, Esq.
QUINN COVARRUBIAS
2220 Douglas Boulevard, Suite 240
Roseville, CA 95661
(916) 400-2300
(916) 400-2311 - Facsimile
squinn@quinncova.com
cmccarthy@quinncova.com
mdavis@quinncova.com
msiergieieva@quinncova.com
eservice@quinncova.com
Attorneys for Defendant BRUCE GARRETT